STATE *ex rel.* RONALD CLAIR MURRAY, AS *Administrator* OF ESTATE OF J. M. HUTCHINSON, *Deceased*

*v.*

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA

(No. 12818)

Submitted May 13, 1969.     Decided June 24, 1969.

*Steptoe & Johnson, Willis O. Shay, Robert G. Steele,* for relator.

*Augustine A. Mazzei, Jr.,* for respondent.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioner, Ronald Clair Murray, as Administrator of the Estate of J. M. Hutchinson, deceased, seeks a writ to compel the respondent, the Public Service Commission of West Virginia, to issue to the petitioner a uniform vehicle identification card for a motor vehicle intended to be operated pursuant to the authority contained in certain certificates of convenience and necessity and to accept payment of the statutory fee for the issuance of such identification card.

Upon the petition this Court, on March 17, 1969, issued a rule returnable April 22, 1969, at which time, by agreement of the parties and by leave of this Court, this proceeding was continued until May 13, 1969. On that date it was submitted for decision upon the petition, the answer of the respondent, the respondent's motion to dismiss, written briefs filed on behalf of the parties and upon argument by counsel for the respective parties.

It is alleged in the petition, and it is undisputed, that prior to his death on June 26, 1964, J. M. Hutchinson held several certificates, granted by the Public Service Commission, under which he operated as a common carrier. Upon Hutchinson's death, the petitioner qualified as administrator of his estate and as such came into possession of said certificates. He here alleges that he continues to hold these certificates.

Subsequent to the petitioner's assumption of his duties as administrator of Hutchinson's estate, he did not operate under the aforesaid certificates, nor has he ever so operated. He did, on several occasions, however, negotiate with various prospective transferees of the certificates. All of these endeavors were unsuccessful, said negotia-

tions extending through 1966. Consequently, no vehicles were registered by the petitioner with the Commission in the 1965-66 fiscal year. No suspension order was issued by the Commission effecting the existing certificates for the failure to obtain registrations for that fiscal year. As alleged in the petition, the petitioner sought and the Commission allowed registration of vehicles for operation under the certificates allegedly held by the petitioner for the fiscal years 1966-67 and 1967-68. Upon the refusal of the Public Service Commission to permit such registration and to issue to the petitioner the aforesaid identification card for the fiscal year 1968-69, the petitioner prosecutes this proceeding in mandamus.

It is the position of the petitioner that although he failed to obtain the required identification card for the fiscal year 1965-66, the Commission did not enter an order of suspension affecting the certificates then in existence; that General Order No. 49.3, entered by the Commission on December 10, 1965, which operated as a suspension order of any certificate where the owner failed to obtain the necessary registration and identification card, was prospective and had no retroactive effect and therefore did not effect a suspension of the certificates in the fiscal year 1965-66. The petitioner further contends that inasmuch as the certificates were not suspended for the failure to obtain the necessary identification card and since the identification card was obtained for each of the fiscal years thereafter, such certificates remain in full force and effect and the Commission is without authority to refuse to issue the petitioner a uniform vehicle identification card for 1968-69 or refuse to accept payment of the statutory fee for the issuance of such identification card.

The respondent contends that the vehicle registration obtained by the petitioner for the 1966-67 fiscal year was improper and that there was, therefore, no registration in effect for that year. Therefore, asserts the respondent, General Order No. 49.3, alluded to above, effects a suspension of the certificates. In arriving at this conclusion the

respondent relies on the final orders entered by it in certain motor carrier cases wherein the petitioner in this proceeding endeavored to transfer the certificates owned by the estate of J. M. Hutchinson to Transportation, Inc. of Kanawha County.

Those orders dated June 5 and 6, 1967 contain certain findings, among which are: (1) J. M. Hutchinson died on June 26, 1964, at which time he was the holder of several motor carrier certificates; (2) Ronald Clair Murray was appointed administrator of Hutchinson's estate; (3) by November, 1964, the administrator had disposed of all the assets of the estate except the motor carrier certificates; (4) no vehicles were registered under the certificates in the name of J. M. Hutchinson after the fiscal year ending June 30, 1964; (5) the administrator did not conduct any operations under the certificates on behalf of the estate; (6) for the fiscal year beginning July 1, 1966, six motor vehicles were registered and identification cards issued in the name of Ronald Clair Murray, Administrator of the Estate of J. M. Hutchinson; (7) the evidence indicates that these vehicles were owned by John Wayne Parker, president of Transportation, Inc.; and, (8) there was no evidence that the vehicles were purchased by the estate or operated by the administrator for and on behalf of the estate.

The orders then recite that it was the opinion of the Commission that an unreasonable period of time had elapsed since any operation had been conducted under said certificates and that the public would be adversely effected by the transfer. It was then ordered that the applications for transfer be denied.

It is urged by the respondent that the findings in the aforesaid orders reveal that the certificates are inactive and that before they can be reactivated an application for reinstatement must be filed and approved by the Commission. The respondent further contends that the issues raised here were decided by this Court when it

refused the petitioner's appeal in the above motor carrier transfer cases and that the doctrine of res adjudicata bars any attempt to again have these questions decided.

This is a proceeding in mandamus and, as repeatedly held by this Court, before one is entitled to such a writ he must show a clear legal right thereto and must further show a corresponding duty on the respondent to perform the act demanded. *State ex rel. Greenbrier County Airport Authority* v. *Hanna,* 151 W. Va. 479, 153 S. E.2d 284; *State ex rel. The County Court of Cabell County* v. *Arthur,* 150 W. Va. 293, 145 S. E.2d 34; *State ex rel. Zagula* v. *Grossi,* 149 W. Va. 11, 138 S. E.2d 356. Here the petitioner claims that he has a clear legal right to the identification card required by Code, 1931, 24A-6-4, as amended, and that the Commission has a corresponding duty to issue such card. It is necessary to examine the record and the applicable statutes in order to determine if such right exists on the one hand and such duty appears on the other.

Code, 1931, 24A-6-4, as amended, provides:

"The commission shall prescribe a uniform vehicle identification card which shall be displayed within the cab of each power unit operated by any motor carrier, showing thereon the description and serial number of the vehicle for which it is issued and the number given to the vehicle by the commission, and may contain such other information as may be required by the commission. Such cards shall be issued annually and displayed in each such power unit not later than July first of each year. It shall be unlawful for any motor carrier to operate any power unit within this State unless said identification card is displayed within such vehicle. It shall be unlawful for the motor carrier, his agent, servant, or employee, or any other person to use or display said identification card or other insignia of authority from the commission at any time after the certificate or permit issued to said motor carrier has expired or has been cancelled, suspended, revoked, or otherwise disposed of."

Clearly, in order to be entitled to the identification card here sought, one must be in possession of a vehicle and must have a certificate in good standing. It is evident from the findings in the orders entered on June 5 and 6, 1967, in motor carrier cases Nos. M. C. 14091, M. C. 6463, M. C. 4459, M. C. 1588 and M. C. 1991 that this petitioner had neither.

In these motor carrier cases wherein the petitioner sought to transfer the Hutchinson certificates, the Commission found that although six motor vehicles were registered and identification cards were issued in the name of Ronald Clair Murray, Administrator of the Estate of J. M. Hutchinson, these vehicles were actually owned by John Wayne Parker, president of Transportation, Inc., the proposed transferee. It was further found from the evidence that such vehicles were not purchased by the estate, nor were they operated by the administrator for and on behalf of the estate.

In addition, the Commission found that an unreasonable period of time had elapsed since any lawful operation had been conducted under the Hutchinson certificates. The order in each of the above cases denied the transfer. It is asserted by the petitioner that since the Commission did not suspend the certificates in those cases such certificates are valid and remain in full force and effect.

This assertion by the petitioner is without merit. Although no order of suspension was entered in the transfer cases the findings alluded to and enumerated above furnish good cause for the Commission's refusal to issue the requested identification cards for the 1968-69 fiscal year. In other words, the authority of the Commission to deny registration of a vehicle under a certificate does not rest alone on whether the certificate was in fact suspended. If findings of the Commission reveal that the certificate holder has failed to comply with the law pertaining to motor carriers, it may refuse to renew his registration. This is an important purpose of the annual registration requirement.

Under the provisions of Code, 1931, 24A-6-4, as amended, a uniform vehicle identification card, to be issued annually by the Commission, shall be displayed in the cab of each power unit operated by any motor carrier. This contemplates the displaying of such identification card in a vehicle operated by a certificated motor carrier. This was not the case where this petitioner was concerned. For the fiscal years 1966-67 and 1967-68, this petitioner obtained the identification cards by virtue of the Hutchinson certificates, but such cards were in fact placed and used in vehicles belonging to John Wayne Parker, president of Transportation, Inc.; nor were such vehicles operated for or on behalf of the Hutchinson estate.

When the Commission found, after a full hearing, that no operation had been conducted under the certificates for an unreasonable period of time it could consider the certificates inactive and refuse to issue the required identification card. That this power exists is made eminently clear by the following language in Code, 1931, 24A-2-3, as amended:

> "The commission is vested with power and authority to supervise and regulate all common carriers by motor vehicle * * * so as to meet the reasonable needs of any community, so as to provide adequate transportation service to the territory traversed by such carriers, and so as to prevent unnecessary multiplication of service among common carriers * * *."

The principal effect of the findings of the Commission in the transfer cases was that the identification cards obtained by the petitioner for the fiscal years 1966-67 and 1967-68 were improperly acquired and were therefore invalid. Whether this operated as a suspension or not, the Commission was thereby warranted in its refusal of the required identification card for the 1968-69 fiscal year sought by the petitioner. Certainly, in the circumstances of this case, the Commission was under no duty to perform the act demanded.

As the petitioner has failed to establish a clear legal right to the relief sought, the writ of mandamus will be denied.

*Writ denied.*